## BOARD OF TRADE BLDG., Inc., v. UNITED STATES.

### No. L–511.

Court of Claims.

Dec. 5, 1932.

Fred F. Ames, for plaintiff.

J. W. Hussey, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

This is a tax case, in which there is little, if any, room for differences as to the facts. The plaintiff is a Virginia corporation engaged solely as the owner and operator of a building known as the Board of Trade Building, located in Norfolk, Va. The steps which led up to the acquirement of said building give rise to this controversy, and may be stated in the following order:

The Farmers' Manufacturing Company, another Virginia corporation, organized prior to plaintiff's incorporation, owned and operated the Board of Trade Building, and this corporation on August 31, 1923, sold and transferred all its capital stock and assets, except the Board of Trade Building, to a corporation known as the Eastern Company. The contract embodying the terms of sale between said parties was executed April 25, 1923, and consummated August 31, 1923.

After the Farmers' Manufacturing Company had contracted to sell its stock and assets to the Eastern Company, except the Board of Trade Building, the stockholders of the former company organized the plaintiff corporation on August 24, 1923, for the sole and express purpose of taking over and operating the Board of Trade Building. The building was on August 24, 1923, duly transferred to the plaintiff corporation, the present owner and operator of the same.

Rentals derived from the building from September 1, 1922, the date when the Farmers' Manufacturing Company acquired it, to August 24, 1923, the date when plaintiff acquired it, totaled $24,864.55, and this sum was first paid by the Farmers' Company to the plaintiff on August 24, 1923. Subsequently, in response to a claim for a portion of said rentals by the Eastern Corporation, it was agreed by the parties then concerned that rentals received from the building from September 1, 1922, to April 25, 1923, the date of the contract of sale, afterwards consummated August 31, 1923, should be paid to the Eastern Corporation, the purchaser, and that the remaining sum of $8,616.73, rentals collected after April 25, 1923, to August 24, 1923, should be paid to the Farmers' Manufacturing Company, and this sum was thereafter turned over to plaintiff, as heretofore noted.

Plaintiff filed in January, 1924, its income-tax return for the period from August 24, 1923, to December 31, 1923, and in said return did not return as income for the period the $8,616.73 it had received from its predecessor corporation. The Commissioner of Internal Revenue assessed additional income taxes against the plaintiff, in so far as here involved, of $1,077.09, and plaintiff paid the same. A timely claim for refund was filed by plaintiff, predicated upon an insistence that the sum of $8,616.73 received by plaintiff August 24, 1923, represented capital receipts and not income to it. The refund claim was denied and this suit begun December 16, 1930.

It is clear from the facts that between April 25, 1923, and August 24, 1923, the plaintiff was not in existence. The rents accruing during that period were paid to the Farmers' Manufacturing Company. The commissioner's ruling was based upon a finding that during the above period the stockholders of the Farmers' Manufacturing Com-

pany were either by formal agreement or by implication of law an association which had not been chartered, operating for the benefit of the plaintiff. This position is claimed to be sustained by the conceded fact that the stockholders of the Farmers' Manufacturing Company were precisely the same people who later organized and incorporated the Board of Trade Building, present plaintiff, and prior to taking such action collected the rentals from the building with a view of paying the same to the plaintiff.

The above contention cannot be sustained. We have no evidence that the contract made and executed by the Farmers' Manufacturing Company and the Eastern Corporation was made for the benefit of the plaintiff. The Farmers' Manufacturing Company continued as a taxable entity at least until August 31, 1923, receiving income from the building until August 24, 1923. There was nothing to prevent an assessment and collection of income taxes against it. There is no evidence in the record that the Farmers' Company sought to evade an income tax by what was done, nor that the Farmers' Manufacturing Company was anything more than a corporate fiction after it disposed of its stock and assets except the building involved. On the contrary, the corporation acquired the building in 1922 and operated it until it was transferred to the plaintiff. During this period the building remained as an asset of the corporation and, so far as disclosed herein, its only remaining income-producing asset. The Farmers' Manufacturing Company could not escape income-tax liability for rentals collected by a transfer of the building to the plaintiff. The difficulties which the defendant cites as confronting the commissioner in the collection of the tax are alone to be considered, if available at all, upon the basis of the taxable entity liable under the revenue laws for the tax. It is not denied that a corporation begins business when its charter is granted for the purposes of a tax as herein involved. The plaintiff corporation began business on August 24, 1923, when it received its charter. It possessed at least two items of property, the Board of Trade Building and the sum of $8,616.73, turned over to it in exchange for stock in the corporation. True, this sum was accumulated by its predecessor corporation from rentals collected from tenants of the building, but manifestly the plaintiff received no income of this character until it possessed and operated the building.

Judgment for plaintiff for $1,077.09 and interest thereon, as provided by law. It is so ordered.